NIXON and another, Respondents, vs. NIXON, imp., Appellant.

*May 6—June 3, 1924.*

*Life estates: Duty of life tenant to pay taxes: Repairs: Payment by remainderman: Presumption: Merger of estates.*

1. The life tenant of homestead property is entitled to its possession and to the rents and profits during life, and is bound to pay the taxes and keep the premises in repair.  p. 201.
2. In the absence of a showing of an express contract to the contrary, taxes and repairs paid by one of the remaindermen are assumed to be contributions to her mother, who was occupying the premises as life tenant, and were collectible, if at all, from the mother's estate, not by contribution from the other remaindermen, some of whom knew of the payments without consenting thereto.  p. 202.
3. A devise by one of the remaindermen of her one-fifth undivided interest in a homestead to the mother, the tenant for life, did not make the mother a tenant in common with the other remaindermen, since merger of her tenancy would be inequitable.  p. 202.
4. A court of equity will prevent a merger when it will be against the interest of the party in whom several estates unite.  p. 202.

APPEAL from a judgment for partition in the circuit court for Sauk county: E. W. CROSBY, Judge.  *Affirmed.*

*Frank R. Bentley* of Baraboo, for the appellant.

For the respondents there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman Quale.*

CROWNHART, J.    Adam Nixon, the owner of lot 9, block 30, in the city of Baraboo, died intestate on July 16, 1887, leaving surviving him Rose Ann Nixon, his widow, and Samuel, *George, William,* Carrie, and *Elizabeth,* his children. Carrie Nixon, whose married name was Carrie Peterson, died testate in 1909, leaving her one-fifth interest in said property to the mother, Rose Ann Nixon.  Samuel Nixon died in 1918, leaving as his sole heir *Isadora Nixon,*

his widow, who thus became the owner of his undivided one-fifth interest in said property. Rose Ann Nixon occupied the property under her homestead right from the time of her husband's death until her death on September 21, 1921, when she died intestate.

This action was commenced by *William H. Nixon* and *Isadora Nixon* against *Elizabeth Nixon* and *George Nixon* to obtain possession of the premises. The only issue raised in the case is by way of a claim set up by *Elizabeth Nixon* in her answer, for contribution from the other parties on account of certain moneys expended by her for taxes, repairs, and insurance on the premises while they were occupied by the mother. The trial court found these expenses as follows: taxes, $475.91; insurance, $49.86; painting, $35.60; other necessary repairs, $192.97; and further found that such moneys were so expended by *Elizabeth Nixon* with the knowledge of the other parties except *William H. Nixon*. The court disallowed the claim of *Elizabeth Nixon* and granted partition according to the respective interests of the parties. It appeared that the estate of Rose Ann Nixon was in process of administration in the county court at the time of the trial of this case, and it was stipulated that her interest in the land might be sold and divided by the order of the county court.

It was the duty of Rose Ann Nixon, who had a life estate in the premises and occupied the same, to pay the taxes thereon and keep the place in repair. *Phelan v. Boylan*, 25 Wis. 679, 686; *Niland v. Niland*, 154 Wis. 514, 517, 143 N. W. 170. "The life tenant, however, where there is no covenant or provision to the contrary, must keep down all charges upon the property necessary to preserve the same for the remainderman." *Hart v. Hart*, 117 Wis. 639, 653, 94 N. W. 890; 17 Ruling Case Law, 641. *Elizabeth Nixon*, so far as the record shows, voluntarily paid the taxes and made the repairs on the premises without any agreement on the part of the other co-owners to reimburse her in any

manner. Her claim appeals strongly to our sense of justice, and yet the rule of law is fairly plain. In the absence of any showing of any express contract to the contrary, it must be assumed that the moneys expended by *Elizabeth Nixon* for the upkeep of the place were contributions to the mother, whose duty it was to pay taxes and keep the buildings in repair. If *Elizabeth Nixon* has a claim for moneys thus expended it must be against the estate of the mother. It was said on the argument that the mother's estate was insufficient to reimburse *Elizabeth Nixon*. But that cannot change the rule of law so as to shift the burden to the other co-owners of the land, without their consent.

The law is based on considerations of justice. The life tenant has the possession of the estate and the rents and profits during life. It would be unjust to permit the tenant to allow the premises to go to waste and thus destroy the interests of the remaindermen. The fact that the rule may sometimes work unjustly is not sufficient to efface the general principle.

But it is urged that upon the death of Carrie Peterson, whose one-fifth interest was devised to the mother, the life estate merged in the fee and thereafter Rose Ann Nixon held as a tenant in common and not as a life tenant. This would extinguish the life estate and defeat the exclusive right of possession in Rose Ann Nixon during her life. This would be inequitable, and the rule now is that a court of equity will prevent a merger when it will be against the interest of the party in whom several estates unite. 17 Ruling Case Law, 649.

*By the Court.*—The judgment of the circuit court is affirmed.